FILED
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT** DISTRICT OF NEBRASKA
**DISTRICT OF NEBRASKA**
**OMAHA DIVISION** 2017 APR 11 PM 2: 34

|  |  |
|---|---|
| **SAMIN HAQQI,** an Individual, | ) OFFICE OF THE CLERK |
| **HUMZA BUSINESS, INC. d/b/a** | ) **CIVIL ACTION NO.** 8:17CV126 |
| **JAKES MINI MART,** | ) |
|  | ) |
| Plaintiffs, | ) |
| v. | ) |
|  | ) |
| **UNITED STATES OF AMERICA,** | ) |
|  | ) |
| Defendant. | ) |

## COMPLAINT

The Plaintiffs, SAMIN HAQQI, an Individual, and HUMZA BUSINESS INC., D/B/A JAKES MINI MART, by and through their undersigned counsel and hereby sue the UNITED STATES OF AMERICA upon the grounds set forth herein, and in support thereof, states as follows:

### FACTUAL BACKGROUND

1. The Plaintiff owns and operates a retail store in Omaha, Nebraska, named Humza Business, Inc., d/b/a Jake Mini Mart. The store is comprised of a commercial storefront, the vast majority of which is dedicated to retail sales of retail food market, focusing mostly on meat and convenience groceries and would be more properly qualified as a small, independent grocer. Furthermore, the store serves the grocery needs of the surrounding residential neighborhoods (hereinafter "**Jakes Mini Mart**").

2. Located in Nebraska's 2nd Congressional District, Jakes Mini Mart serves a community where an estimated 16.4% of the local residents are below the poverty level[1]. Roughly 24.1% people 60 years and over, and 56.3% with children under 18

---

[1] According to the United States Census Bureau's Fact Finder, American Community Survey 5-Year Estimates, 2014.

years of age in the 2nd Congressional District are participants in the Supplemental Nutrition Assistance Program[2], formerly known as Food Stamps, which is overseen by the Food & Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA").

3. Accordingly, Jakes Mini Mart began accepting Electronic Benefit Transfers (or "EBT") to better serve the local community. As a result, Jakes Mini Mart grew its SNAP participant customer base to a substantial share of the store's total clientele. EBT transactions at Jakes Mini Mart accounts for a substantial portion of the store's gross revenue, though the SNAP clientele accounted for an even larger portion of the gross revenue (the difference being found in non-SNAP related purchases).

4. Since the store began accepting food stamps/EBT, Jakes Mini Mart never once received a warning letter, disciplinary action, or any other correspondence from the United States Department of Agriculture which would indicate that the store was somehow improperly accepting benefits or otherwise operating the program incorrectly.

5. Nevertheless, on January 12, 2017, the USDA, through the FNS, sent the Plaintiffs a Charging Letter pursuant to 7 C.F.R. §278.6, alleging a series of violations on the part of the Plaintiffs in their acceptance of SNAP benefits from participants.

6. The Plaintiffs vehemently denied and defended against the Charging Letter, but on February 1, 2017, were permanently disqualified from SNAP.

7. Accordingly, the Plaintiffs filed an Administrative Review as permitted by 7 C.F.R. §279, and presented arguments and evidence in support of their position. The Plaintiffs

---

[2] See USDA Publication of January 2017, Profile of SNAP Households: Nebraska Congressional District 2.

took issue not only with the disqualification process, but also with the comparative lack of direct evidence that any violations of SNAP retailer policies had occurred.

8. The Administrative Review Division of the USDA responded to the Plaintiffs' appeal in a letter and opinion dated March 9, 2017, and received on March 10, 2017. The Plaintiffs' appeal was denied. A copy of the letter and opinion dated March 9, 2017 are attached hereto as **Exhibit "A"**.

9. This Judicial Appeal has been filed, timely, to seek the reversal of the USDA's current decision to permanently disqualify the Plaintiffs from participating as a SNAP retailer.

## JURISDICTION AND VENUE

10. The Plaintiffs bring this action based upon their disqualification from eligibility to participate as a retailer in the Supplemental Nutrition Assistance Program, as codified by Congress in 7 U.S.C. §§ 2011 – 2036(c).

11. This Court has subject matter jurisdiction over the matters raised by the Plaintiffs in this case pursuant to 7 U.S.C. §2023. Furthermore, 28 U.S.C. §1331 gives this Court original jurisdiction over civil actions arising under the laws of the United States, for which the aforementioned statute and regulation qualify.

12. Venue is appropriate in this District pursuant to 7 C.F.R.§279.7(a), 7 U.S.C. §2023(13) and 28 U.S.C. §1391(b) as this Plaintiffs' business was owned and operated in Omaha, Nebraska, and because the facts giving rise the circumstances herein occurred in the District of Nebraska.

## PARTIES

13. The Plaintiff, SAMIN HAQQI, an Individual, is a natural person and a resident of Omaha, Nebraska, and is the owner of Jakes Mini Mart. Mr. Haqqi is referred to collectively with the other Plaintiffs as "**Jakes Mini Mart**" herein.

14. The Plaintiff, HUMZA BUSINESS INC., D/B/A JAKES MINI MART, operates at 8320 Blondo St., Omaha, NE 68134. Jakes Mini Mart and Grocery is referred to herein with the other Plaintiffs collectively as "**Jakes Mini Mart**."

15. The Defendant, the UNITED STATES OF AMERICA, acting through its agency, the United States Department of Agriculture (hereinafter referred to as the "USDA" or "Department"), and its subservice, the Food and Nutrition Service.

## GENERAL ALLEGATIONS

16. The Supplemental Nutrition Assistance Program ("SNAP") is a government program operated pursuant to Title 7 United States Code, Chapter 51, and codified more specifically as 7 U.S.C. §§2011-2036(c).

17. The general purpose of the SNAP is to provide food benefits (formerly "food stamps") to program participants who meet certain financial need requirements. SNAP participants are awarded benefits (money) issued on a state-by-state basis in varying amounts based upon the needs of their household. These benefits are transmitted to, and utilized by the participant, through an Electronic Benefits Transfer (EBT) card, which conceptually functions similar to a debit card.

18. The benefits are to be used by the participant only for the purchase of food and other eligible items sold by approved SNAP retailer, such as Jakes Mini Mart.

19. In turn, SNAP retailers are governed by the Defendant through 7 C.F.R. §278.6 which

    in pertinent part permits the disqualification or suspension of retailers who violate

    SNAP regulations.

20. Significantly, SNAP violations on the part of retailers typically occur in two areas: (1)

    the sale of ineligible items to SNAP participants (using their EBT benefits), and (2)

    trafficking in SNAP benefits.

21. The term "trafficking" is defined at length by 7 C.F.R. §271.2, which states in pertinent

    part that trafficking is:

    "(1) The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone;

    (2) The exchange of firearms, ammunition, explosives, or controlled substances, as defined in section 802 of title 21, United States Code, for SNAP benefits;

    (3) Purchasing a product with SNAP benefits that has a container requiring a return deposit with the intent of obtaining cash by discarding the product and returning the container for the deposit amount, intentionally discarding the product, and intentionally returning the container for the deposit amount;

    (4) Purchasing a product with SNAP benefits with the intent of obtaining cash or consideration other than eligible food by reselling the product, and subsequently intentionally reselling the product purchased with SNAP benefits in exchange for cash or consideration other than eligible food; or

    (5) Intentionally purchasing products originally purchased with SNAP benefits in exchange for cash or consideration other than eligible food;

    (6) Attempting to buy, sell, steal, or otherwise affect an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signatures, for cash or

consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone." 7 C.F.R. §271.2 (2016)

22. While most of 7 C.F.R. §278.6 sets forth a graduated scale for punishment of SNAP retailers for the sale of ineligible items, trafficking is treated more harshly. Specifically, if a retailer is found to be trafficking in SNAP benefits, it (more specifically, the individual(s) who has applied for SNAP participation) is permanently disqualified from participation in the program, and issued a Civil Money Penalty (CMP) of no more than $59,000.00.

23. The CMP itself is not immediately assessed against the retailer, but instead is held in abeyance until the retail store is sold (regardless of the period of time intervening between the permanent disqualification and the sale), and then taxed to the individual(s) who were the applicants on behalf of the store.

24. Such are the circumstances of this case. The Plaintiffs have been permanently disqualified by the Defendant, resulting in damage to the Plaintiffs, and a potential future fine.

## COUNT I: REQUEST FOR JUDICIAL REVIEW

25. The Plaintiffs incorporate and restate each and every paragraph set forth above as though fully set forth herein.

26. The Plaintiffs, pursuant to 7 U.S.C. §2023 and 7 C.F.R. §279.7 have the right to, and hereby do, request a judicial review of the permanent disqualification issued by the Defendant against Jakes Mini Mart and its proprietor.

27. The initial administrative decision, in addition to the Final Agency Decision rendered upon the Administrative Appeal, errantly found that the Plaintiffs had committed

trafficking as a result of its use of an algorithm/computer program which arbitrarily determined that the Plaintiffs' EBT transactions were inherently suspicious.

28. However, at a minimum the preponderance of the evidence indicated that the algorithm/computer program failed to take into account the business practices of Jakes Mini Mart, and the pricing structure maintained by the store for SNAP eligible items, and the specialized clientele who shop at the store.

29. As a result, the Defendant relied solely on assumptions resulting from the data in its possession, and summarily disregarded the plausible and likely explanations provided by the Plaintiffs.

30. As such, the Defendant, acting through its department and sub-departments in the USDA, improperly and impermissibly permanently disqualified the Plaintiff from participation in SNAP.

31. Therefore, the permanent disqualification against the Plaintiffs should be set aside by this Court and the Plaintiffs' status as an approved SNAP retailer should be reinstated.

**WHEREFORE**, the Plaintiffs, SAMIN HAQQI, an Individual, and HUMZA BUSINESS INC., D/B/A JAKES MINI MART, respectfully request this Honorable Court conduct a Judicial Review of the Defendant's permanent disqualification of the Plaintiffs, and subsequently enter Judgment against the Defendant for improperly permanently disqualifying the Plaintiffs, as well as awarding the Plaintiffs the costs incurred in this action.

This matter has been respectfully submitted to the Court by the undersigned attorney, and shall be served upon the Defendant in the manner prescribed by the Federal Rules of Civil Procedure, 7 C.F.R. §279 and 7 U.S.C. §2023, as will be evidenced by the proof of service filed with the Court hereafter.

Dated: April 10, 2017                    Respectfully submitted,

*Andrew Z. Tapp*

Andrew Z. Tapp, Esquire
Pro Hac Vice
Florida Bar Number: 68002
Metropolitan Law Group, PPC
1971 W. Lumsden Road, #326
Brandon, Florida 33511-8820
(813) 228-0658
Andrew@Metropolitan.legal
Lajeana@Metropolitan.legal

EXHIBIT "A"

United States
Department of
Agriculture



Food and
Nutrition
Service

Administrative
Review Branch
4ᵗʰ Floor
3101 Park
Center Drive
Alexandria, VA
22302

Telephone:
(610) 775-3083

Fax
(703) 305-2821

March 9, 2017

Paul M. Muia, Esquire
The Service Life Building
1904 Farnam St.
Suite 605
Omaha, NE 68102

RE:   Samin Haqqi, Owner
      Jakes Mini Mart (Humza Business Inc. and Jake Mini Mart)
      8320 Blondo St.
      Omaha, NE 68134

Case C0195401

Dear Counselor:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture
(USDA), Food and Nutrition Service (FNS) in response to your request for
administrative review. The decision includes a statement regarding your client's
relevant rights to a judicial review.

It is the decision of the USDA that there is sufficient evidence to support a finding
that a permanent disqualification from participating as an authorized retailer in the
Supplemental Nutrition Assistance Program (SNAP) was properly imposed against
Jakes Mini Mart by the Retailer Operations Division.

Sincerely,

~ Rachan

M. Viens
Administrative Review Officer

Enclosure - Final Agency Decision

1

**U.S. Department of Agriculture**
**Food and Nutrition Service**
**Administrative Review Branch**
**Alexandria, VA 22302**

Jakes Mini Mart,
Appellant,

     v.

Case C0195401

Retailer Operations Division,
Respondent.

## FINAL AGENCY DECISION

The record indicates that Jakes Mini Mart (Appellant) committed violations of the Supplemental Nutrition Assistance Program (SNAP). It is the decision of the U.S. Department of Agriculture (USDA) that there is sufficient evidence to support a finding that the permanent disqualification from participation as an authorized retailer in the program, as initially imposed by the Retailer Operations Division, (Retailer Operations) was appropriate.

## ISSUE

The issue accepted for review is whether Retailer Operations took appropriate action, consistent with 7 CFR § 278.6(a), (c) and (e)(1) in its administration of the SNAP, when it assessed a permanent disqualification against Appellant.

## AUTHORITY

7 U.S.C. § 2023 and its implementing regulations at 7 CFR § 279.1 provide that "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may file a written request for review of the administrative action with FNS."

## CASE CHRONOLOGY

By Charge letter dated January 12, 2017, Retailer Operations informed the owner that Appellant was in violation of the terms and conditions of the SNAP regulations based on EBT benefit transactions that "establish clear and repetitive patterns of unusual, irregular, and inexplicable SNAP activity for your type of firm." The letter of charges states, that "As provided by Section 278.6(e)(1) of the SNAP regulations, the sanction for trafficking is permanent disqualification." The record shows that the owner replied to the Charge letter by letter dated January 20, 2017.

2

Retailer Operations issued a Determination letter dated February 1, 2017. This letter informed Appellant that it was permanently disqualified from the SNAP in accordance with Sections 278.6(c) and 278.6(e)(1) of the SNAP regulations. Retailer Operations considered Appellant's eligibility for a civil money penalty (CMP) according to the terms of Section 278.6(i) of the SNAP regulations. Appellant was determined not eligible for the CMP because insufficient evidence was submitted timely to demonstrate that the firm had established and implemented an effective compliance policy and program to prevent violations of the SNAP per the regulations cited.

By letter dated February 3, 2017, the owner, via counsel, appealed Retailer Operations' determination and requested administrative review of this action. The appeal was granted by letter dated February 8, 2017. Counsel provided additional information by email dated March 1, 2017, with an attached letter dated February 28, 2017. This letter and the Exhibit A, price sheets and photos, and Exhibit B photographs, were also provided by hard copy.

## STANDARD OF REVIEW

In an appeal of an adverse action, the Appellant bears the burden of proving, by a preponderance of the evidence, that the administrative action should be reversed. That means the Appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than not true.

## CONTROLLING LAW AND REGULATIONS

The controlling statute in this matter is contained in the Food and Nutrition Act of 2008, as amended, 7 U.S.C. § 2021 and § 278 of Title 7 of the Code of Federal Regulations (CFR). Sections 278.6(a) and (e)(1) establish the authority upon which a permanent disqualification may be imposed against a retail food store or wholesale food concern in the event that personnel of the firm have engaged in trafficking SNAP benefits.

7 CFR § 278.6(e)(1) reads, in part, "FNS shall disqualify a firm permanently if personnel of the firm have trafficked as defined in § 271.2." Trafficking is defined, in part, in 7 CFR § 271.2, as "the buying or selling of SNAP benefits for cash or consideration other than eligible food."

7 CFR § 271.2 states in part that, "Eligible foods means: Any food or food product intended for human consumption except alcoholic beverages, tobacco and hot food products prepared for immediate consumption."

7 CFR § 278.6(a) states that "FNS may disqualify any authorized retail food store ... if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an **electronic benefit transfer system...**" (emphasis added)

3

## SUMARY OF THE CHARGES

The issue in this review is whether, through a preponderance of evidence, it is more likely true than not true that the questionable transactions were the result of trafficking. The charges on review were based on an analysis of SNAP electronic benefit transfer (EBT) transaction data during the period of June 2016 through November 2016. This involved three patterns of EBT transaction characteristics which are indicative of trafficking:

1. There were an unusual number of transactions ending in a same cents value.
2. Multiple transactions made from individual benefit accounts within unusually short time frames.
3. Excessively large purchase transactions were made from recipient accounts.

## APPELLANT'S CONTENTIONS

The following may represent a brief summary of the contentions in this matter however, in reaching a decision, attention has been given to all contentions presented, including any not specifically recapitulated or reference herein. The contentions are essentially:

- I have been in business here in Omaha for over 30 years.
- We are honest and hardworking and I hope that we can clear up any miscommunication so that we can continue to be a beacon of hope to the community.
- Our small business helps improve the lives of so many people so it is our duty to uphold our truths and values.
- I have several Muslim and Jewish clients some even refugees who are dependent on getting Kosher and Halal meats. They buy in bulk, along with our disabled veteran clients who are often times delivered food free of charge just to make sure they are able to get the items they need. We also deliver directly to them on an as needed basis.
- These customers are not able to walk great distances due to disabilities.
- We are always open for any improvement and input that can help us grow as a business and provide better services for our customers.
- This is an ethnic grocery store.
- Due to the competitive nature of ethnic grocery stores the pricing list reflects this fact.

Appellant provided Exhibit A, a two page price list. Most items ended in pricing of .99 cents. There were also items ending in .89 and .79 and .75 cents. There were also photographs of items with prices indicated. Exhibit B consists of 18 photographs of items and prices and two identical photos of signage of goat meat "on order Halal," goat leg, ½ goat, lamb, mixed meat, beef (Halal), and ground beef, and prices noted as $5.99 to $9.99/pound.

## ANALYSIS AND FINDINGS

Retailer Operations presented a case that Appellant trafficked SNAP benefits. Each Attachment furnished with the Charge letter represents the questionable and unusual patterns of SNAP transactions indicative of trafficking which were conducted at Appellant during the review

4

period. As patterns of unusual transactions appear across multiple Attachments the case of trafficking becomes more convincing.

**Attachment 1: There were an unusual number of transactions ending in a same cents value.**
During the review period, Appellant conducted 1,563 SNAP transactions. Of these, there were 597 transactions in the amount of $9.00 or more; a total of 13 transactions ended in zero cents, all conducted in October 2016. The transactions listed range from $9.00 to $159.00. A total of 123 transactions ended in a 99 cent value ranging from $9.99 to $95.99. A total of 89 transactions ended in an 89 cent value ranging from $9.89 to $130.89, for redemptions of $7,499.98. The record shows that when compared to six other nearby convenience stores, Appellant had 225 flags on this Attachment as compared to zero at each of the six other stores for the same time frame. When a number of transactions end in same cents values it appears that these transaction amounts are contrived. Therefore, in the absence of any compelling evidence to the contrary, these transactions are indicative of trafficking.

Appellant contends:

- We have must [sic] of our products priced in odd cents rather than going to the next dollar value we also have a penny jar at our counter to offset odd number purchases.
- Jake's has no control over its shopper paying a set amount in EBT and paying the rest in cash. This is a common practice and nothing precludes it.
- This is not an unusual, irregular or inexplicable activity for an ethnic grocery not just a convenience store.
- Cents Amounts: 89 - Jake does not offer coupons or specials; it offers discounts on the total amount of purchase. The amounts are discounted to a few cents of every transaction.
- Cents Amounts: 00 - Jake has no control over its shopper paying a set amount on EBT and paying the rest in cash. There is no SNAP regulation that precludes such a practice.

All SNAP transactions are electronic. No change is given in SNAP transactions and charging an odd number versus and even cent number is the same amount of work since all prices of eligible foods need to be entered into the cash register for a total. An undated two page price list of eligible foods was advanced for review. One page listed 19 items ranging in prices of $6.75 to $29.99. Thirteen items ended in .99 cents, four ended in .89 cents, one product ended in .79 cents and one had a .75 cent ending value. The second page listed 38 items ranging in prices of $4.99 to $19.99. Twenty-nine items ended in values of .99 cents, and nine ended in .89 cents. In addition, 22 undated photos of items with handwritten amounts or signs of prices were provided.

When many items end in .99 or .89 cents, it is usual to have totals of numerous such priced items end in .89 or .99 cent totals. No penny jar is seen in the FNS photos of the small, crowded check-out area, and no photo of a penny jar was provided by Appellant. As to the 00 ending values, while a recipient may set an amount to be debited from its benefit card, the suspicious aspect of the 00 ending transactions is that they all occurred in October from the 2nd to the 11th.

No cash register tapes of itemized purchases were advanced. No vendor inventory invoices of eligible food stock were provided. No tax records were advanced and no recipient affidavits

were provided as evidence to support Appellant's contentions that it discounted totals. The 99 cent ending transactions are not specifically addressed in the February 28, 2017 reply.

**Attachment 2:** Multiple SNAP purchase transactions were made from individual benefit accounts in unusually short time frames. Appellant conducted 277 transactions at or exceeding $20 during the review months. Each transaction listed is for at least $20.00, each data set totals at least $100, and all were conducted within 24 hours. This Attachment lists 45 transactions in 19 sets of two or more transactions, conducted by 14 different households ranging in set total amounts from $100.78 to $233.10. The redemptions listed total $2,970.16, and represent 16% of transactions at the $20 threshold. For example, one household (HH) transacted $144.69 in two transactions in 28 seconds, another HH transacted $122.45 in two transactions in 36 seconds, and another transacted $136.78 in one minute and seven seconds. The record shows that when compared to six other nearby convenience stores, Appellant had 45 flags on this Attachment as compared to zero at each of the six other stores for the same time frame. Multiple transactions conducted by the same households within a 24 hour period supports that Appellant was attempting to avoid single high dollar transactions, a practice that is indicative of trafficking.

Appellant contends:

- Some people bring in family and friends so they make multiples purchases in the same day and pay with the same card for purchase of same family meal plans.
- There is no regulation that prohibits taking two multiple transactions from the same individual in the same day or the day after.
- The Attachment shows 44 transactions that occurred from a half minute to six hours. Jake cannot tell its shopper not to go and pick-up items or not come back the same day to make additional purchases.
- FNS is wrong in assuming that accepting back to back purchase from the same individual as unusual or irregular.

Appellant is a convenience store. According to the record there are 16 stores including three super stores, two medium groceries, seven convenience stores, and four combination grocery/other stores within a one mile radius of Appellant. The data shows that of the 87 households flagged at Appellant, 62, or 71%, made a SNAP transaction at a large grocery, a supermarket or super store within one day of conducting a transaction at Appellant. Sixty-nine households, or 79%, conducted a SNAP transaction at a large grocery, a supermarket or super store within three days of conducting a transaction at Appellant. Thus many area households did access other larger stores to meet their grocery needs. For example, one household transacted benefits at two different supermarkets and four different super stores up to 5.60 miles from Appellant within three days of conducting a transaction at Appellant. Within three days of conducting a transaction at Appellant, another household transacted benefits at six different super stores at a distance of up to 9.42 miles. A different household transacted benefits at seven different super stores within a 7.97 mile distance of Appellant within one day of conducting a transaction at Appellant.

Appellant transacted a SNAP total dollar volume of $22,559.06 for the review months as compared to the state average SNAP redemption of $11,063.51 for the same store type for the

6

same time period; a 104% difference, and a 73.7% higher SNAP average dollar volume total than convenience stores in Douglas County that averaged SNAP dollar volume of $12,987.63. Appellant also had a 117.6 % higher SNAP average transaction amount at $14.43, as compared to Douglas County convenience stores that had an average SNAP transaction amount of $6.63, and 99% higher than the state convenience stores average which was $7.24. Appellant also had more transactions flagged on this Attachment at 45 when compared to six nearby convenience stores that had zero each for the same time period. This is irregular.

The record shows that Retailer Operations assessed some recipient shopping habits, and the three households reviewed conducted SNAP transactions at other authorized stores during the review period including supermarkets and super stores. On June 5, 2016, one household conducted a transaction for $90.65 at Appellant, and then less than an hour later conducted a transaction at a super store for $53.37. The next day this household conducted another transaction at Appellant for $48.99, and a few hours later transacted $52.20 at a super store. On August 5, after the HH conducted a transaction at a super store for $21.24, it then conducted a transaction at Appellant for more than $100, and later another transaction there for $8.97. The next day on August 6, the household transacted $12.60 at a super store, and a few hours later it conducted a transaction for $78.99 at Appellant. This is unusual.

On September 5, another household conducted four transactions totaling $204.48 at Appellant, and the next day it transacted $19.61 at a super store. On October 5 this household conducted seven transactions at Appellant totaling $244.47, and the next day it transacted $64.64 at a super store. Another household did not conduct any transactions at Appellant during the review period until the month of October. On October 2 after conducting transactions at two different supermarkets for a total of $118.23, this household conducted a transaction at Appellant for $159.00. On October 5, this household conducted a transaction at Appellant for $95.58, and then less than an hour later conducted a transaction at a super store for $120.96. Less than 10 minutes later, the household conducted another transaction at Appellant for $36.08. This household transacted a total of $290.66 or 45% of its benefits at Appellant during the month of October. This is suspicious

Retailer Operations found that transactions such as those listed on the Attachment, in a convenience store with limited stock, limited counter space and no shopping carts or shopping baskets, were more likely than not to be the result of trafficking and not the legitimate sale of food. Insufficient evidence was advanced that the transactions listed were for eligible SNAP foods. No vendor invoices of inventory of eligible food stock were advanced to support the SNAP redemptions at Appellant during the review period. The photos advanced by Appellant were largely close-ups and did not generally depict the number of stocking units of the items apart from a profusion of beverages. No itemized cash register tapes were provided as evidence of eligible food sales. No business tax returns or state tax filings were advanced, and no beneficiary affidavits were advanced regarding multiple large purchases within 24 hours. Thus, the transactions on this Attachment were not adequately proven to be legitimate SNAP transactions for eligible foods.

**Attachment 3: Excessively large purchase transactions were made from recipient accounts.** This Attachment lists 145 individual EBT transactions conducted by 58 different households

ranging from $40.25 to $159.00, for SNAP redemptions totaling $10,540.52. The transactions listed on this Attachment are for amounts that exceed the average transaction amount for the same store type in the same state by more than three or four times. When compared to six nearby convenience stores, Appellant had more than a hundred transactions flagged on this Attachment as compared to 1, 4, 7 and 0 each, at the other three other stores for the same period. Appellant also had a higher average SNAP transaction amount at $14.43, as compared to six nearby convenience stores that had amounts for the same period of: $4.96, $5.80, $5.67, $5.78, $4.11 and $4.43. This is irregular.

Appellant contends:

- My business caters to a large customer base due to the supermarket down the street shutting down we have an influx of customers.
- There customers are veterans, disabled and often times counting on their EBT/Food Stamps to survive.
- Since the supermarket closed down they are not able to walk great distances due to their disabilities and veterans are thus my clients.
- We are growing as a business and this we are getting more sales and clients. I have several Muslim and Jewish clients some even refugees who are dependent on getting Kosher and Halal Meats. They buy in bulk, along with our disabled veteran clients who are often times delivered food free of charge just to make sure they are able to get the items they so desperately need. We also deliver directly to them on as needed basis.
- We do special food orders and specialty meats that customers request such as (Goat or Kosher) cut into steaks and 2 or 3 bags of rice (20 lbs.) and 2 gallons of cooking oil.
- We sell to the community quite a bit because we are the only grocery store in the area.
- Jake is an ethnic store that serves Africans, Pakistanis, Indians, Muslims, and Jewish community. This community buys meat which is not in most stores, for example Kosher and halal sheep and goat meat that as a rule are more expensive than non-Kosher and halal. See Exhibit B.
- Goat and sheep meat costs $9.99/lb. and $7.99/lb. respectively. Halal chicken breast costs $6.99/lb. A 10 pound of goat meat [sic] costs $99.99 while sheep is $77.99. It is not unusual to sell $159.99 (see item 271) or $79.99 (item 318-321) of Kosher or Halal food.
- These individual would not get the same items from any grocery or convenient [sic] stores.
- Apart from Jakes regular SNAP customers the bulk of the large purchases are from one time SNAP recipients.
- These large purchases are not irregular, unusual or inexplicable. These are every day sells [sic] for Jake or an ethnic grocery store the size of Jake and in the neighborhood that Jake is located.

The record supports that No Frills Supermarket located at 8005 Blondo St., classified as a super store, withdrew as a SNAP retailer in March 2016. Data at Appellant supports that its SNAP redemptions increased 67% that month, and that the total SNAP purchase count rose 105% from 98 in February 2016 to 201 in March 2016. The purchase count at Appellant stayed at more than 200 each month following through the end of the review period. As such, the evidence supports

8

that Appellant did experience a higher number of SNAP transactions at the proximate time that the nearby super store exited as a SNAP retailer. SNAP redemptions at Appellant also rose, although there was a 21% dip in June 2016. During the review period, Appellant's SNAP redemptions hit a high of more than $4,700 in October 2016.

Retailer Operations determined that FNS photographs show there were a few ethnic grocery items on Appellant's shelves. There were no fresh or frozen meats seen, and there were no indications that kosher and/or Halal Meats were sold or could be special ordered at Appellant. No signage was seen that corresponded to the two identical photos of handwritten signs provided by Appellant regarding Halal goat, lamb, mixed meat, beef (Halal), or ground beef. Interestingly this sign shows ground beef at $5.99/ lb., while the price sheets show ground beef Halal at $6.99/lb. and a 3 lb. pkg. at $9.99, with no price listed for the ground beef at $5.99. The only meat seen in the FNS photos besides canned meats and jerky was a package of lunchmeat and a package of bacon. The visit survey form states, "unpackaged inventory sitting in aisle, shelves messy and unorganized, significant portion of one cooler empty." Non-food inventory included: alcohol, tobacco, lottery, paper products, and cleaning supplies. The evidence from the FNS store visit supports that Appellant is a convenience store with limited ethic items, rather than an ethnic grocery.

According to the store visit report, Appellant's food is not stored in a storage area out of the public view, and no fresh or frozen goat, sheep, chicken or beef were listed on the inventory checklist. The FNS report supports that there were no fresh or frozen kosher and/or Halal meats present at Appellant on the day of the store inventory, and there was no indication that Appellant sold kosher and/or Halal meats, or took orders for these items. Some of the meat photos provided by counsel are not clear as to what meat is enclosed in the packs seen, or if it is Halal or kosher meat. One marked pack of chicken breast tenderloins appears to be the same pack as seen in regular food stores. Another marked bag of boneless, skinless chicken breast says "Contains up to 15 percent of solution" and "Product of Canada."

The FNS photos, as is true with Appellant's own photos, show products seen in typical convenience stores such as: chips, water, carbonated beverages, peanut butter, juice, oil coffee, sugar and Mrs. Butterworth's syrup. The ethnic items in Appellant photos are limited to items such as: mango mix pickle, moong whole, parboiled and large bags of Basmati rice, Dall, and a brand of black tea. It is noted that the undated photos submitted by Appellant are mostly all close-up shots of items and that it cannot be determined where in the store these items are located or even if they are items in stock at Appellant.

The owner's contentions that Appellant does special bulk food orders and orders specialty meats such as (goat or kosher) cut into steaks and 2 or 3 bags of rice (20 lbs.) and 2 gallons of cooking oil is not backed by sufficient evidence. The evidence in the record supports that there was no goat, kosher and/or Halal meats at Appellant on the day of the store visit. A few 20 lb. bags of rice and some cooking oil are seen in the photos, but there do not appear to be any gallon jars of cooking oil in the FNS photos. Other than the undated photos and two pages of prices, the owner did not submit any documentation to support the fact that Appellant stocks specialty meats such as goat, kosher, or Halal meats or orders special foods. No vendor invoices of eligible food stock

9

for the review months were submitted. No customer affidavits were advanced as to delivery of groceries as contented, or the ability to order special items or ethnic meats.

The large dollar transactions remain questionable when considering the proximity of other larger authorized stores located in a radius of a mile from this location. A shopping analysis shows that recipients who frequented Appellant also shopped at larger stores, yet inexplicably spent large dollar amounts at Appellant. When one considers that SNAP benefit allotments are calculated to provide households with a bare minimum of food security, it is unreasonable that households would spend large sums of their monthly benefit allotments at a convenience store.

While the charged owner was given the opportunity to provide evidence of the legitimacy of the transactions listed, in this case, Retailer Operations determined the evidence provided did not outweigh the evidence in the record, and it acted to permanently disqualify Appellant.

## CIVIL MONEY PENALY

Retailer Operations determined that Appellant was not eligible for a trafficking civil money penalty according to the terms of Section 278.6(i) of the SNAP regulations. The owner did not submit documentation to prove that Appellant met the trafficking CMP requirements as stipulated in the regulations at 7 CFR Section 278.6(i). These regulations specify the criteria for a firm's eligibility for a civil money penalty in lieu of permanent disqualification for trafficking.

The criteria listed in the regulations as a whole, are identified as a minimum standard that firms must meet in order to be eligible for such a penalty. It is clear that the statute and the regulations allow no flexibility below the level of this stated standard. Accordingly, Retailer Operations determined that Appellant did not qualify for a civil money penalty in lieu of a permanent disqualification.

## CONCLUSION

Retailer Operations' analysis of Appellant's SNAP transaction record was the primary basis for its determination to permanently disqualify Appellant. This data provided substantial evidence that the questionable transactions during the review period had characteristics that are consistent with trafficking violations in SNAP benefits. Based on a review of all of the evidence in this case, by a preponderance of the evidence, it is more likely true than not true that SNAP violations did occur as charged by Retailer Operations. Therefore, the decision to impose a permanent disqualification against Appellant is sustained.

Retailer Operations also determined that Appellant was not eligible for a trafficking civil money penalty according to the terms of 7 CFR Section 278.6(i) of the SNAP regulations. Under review, the denial of a trafficking CMP was correct and proper.

## RIGHTS AND REMEDIES

Your attention is called to Section 14 of the Food and Nutrition Act of 2008 and to Section 279.7 of the regulations (7 CFR § 279.7) with respect to applicable rights to a judicial review of this determination. Please note that if a judicial review is desired, the Complaint, naming the United States as the defendant, must be filed in the U.S. District Court for the district in which the Appellant's owner resides or is engaged in business, or in any court of record of the State having competent jurisdiction. If any Complaint is filed, it must be filed within thirty (30) days of receipt of this Decision.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

| /S/ | March 9, 2017 |
|---|---|
| M. VIENS | DATE |
| ADMINISTRATIVE REVIEW OFFICER | |

11

JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
SAMIN HAQQI, an Individual,
HUMZA BUSINESS, INC. d/b/a JAKES MINI MART

**DEFENDANTS**
UNITED STATE OF AMERICA

**(b)** County of Residence of First Listed Plaintiff   Douglas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Andrew Z. Tapp, Esq., Pro Hac Vice, Metropolitan Law Group, PLLC,
1971 W. Lumsden Rd., #326, Brandon, FL 33511
Telephone: 813-228-0658

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                                 Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
7 USC Section 2023 and 7 CFR Section 278.6
Brief description of cause:
Disqualification of SNAP

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE                                         DOCKET NUMBER

DATE   4/7/17
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE